Millicent Pink, Appellant, v. John T. Dempsey, Administrator of Estate of Edward A. Grossman, Deceased, Appellee.

Gen. No. 45,846.

Opinion filed June 9, 1953. Released for publication June 30, 1953.

Nat M. Kahn, and William S. Kleinman, both of Chicago, for appellant.

■■■■■■■■■

■■■■■■

PHILIP A. WINSTON, JOHN C. TRUSSELL, DON M. PEEBLES, and WILLIAM J. LUNN, all of Chicago, for appellee; PHILIP A. WINSTON, of Chicago, of counsel.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Millicent Pink, claimant, filed her claim in the probate court of Cook county, Illinois, in the estate of Edward A. Grossman, deceased, for all the assets of the estate. The claim was based upon an oral contract with the decedent to leave a will giving claimant all his property in consideration of personal services performed by her. The claim was disallowed by the probate court, and an appeal was taken to the superior court of Cook county, where, pursuant to statute, a trial *de novo* was had and the issue submitted to a jury. The jury returned a verdict, disallowing the claim, and judgment was entered thereon by the court.

The estate was of the net value of approximately $48,000. The services alleged to have been performed for decedent commenced in 1945 and continued until his death on November 19, 1949. At that time he was 53 years old, and had been engaged in selling neckties at wholesale. He is described by claimant's only witness as an ailing, lonely bachelor, much in need of the kindly personal services which claimant was able to render. According to the testimony for claimant she was constantly in the company of decedent, cooked his meals, spent week ends with him, tidied up his clothes, and induced some correction of his unpleasant habits. Her witness also testified to conversations with the decedent relating to the alleged agreement to convey all his property to claimant, and to arrangements for and promises of marriage.

■ ■ As against this, the estate produced the testimony of many witnesses which put decedent in

407

quite a different light. He is there pictured as a jovial man, seeking the company of the opposite sex, and apparently quite successful in the cultivation of that companionship whenever he desired it. It is shown that between 1945 and 1947, decedent was engaged to a Mrs. Rae Lurie; that this engagement was broken in 1947; that he then kept company with another woman in 1948, and with another in 1949; that in 1946 he bought his fiancé a car as an engagement present, and otherwise was quite cavalier and generous in his attentions to the ladies. Suffice it to say that the proof was sufficient to present an issue for the jury, and that the verdict cannot be disturbed unless there was an error in the ruling of the court.

Claimant was allowed to testify only within the restricted field permitted by section 2 of the Evidence Act, that is, to rebut the testimony of witnesses on behalf of the estate who had testified to conversations with her sharply controverting the basis of her claim. The court held that she was disqualified under section 2 of the Evidence Act from testifying generally. About one year prior to the trial of the cause in the superior court, the estate took the pretrial deposition of the claimant and interrogated her as to all phases of her claim. In this deposition claimant set forth specific names, dates, and events in support of her claim. This pretrial discovery deposition was had pursuant to section 58 of the Civil Practice Act and Rule 19 of the Rules of the Supreme Court [Ill. Rev. Stats. 1951, ch. 110, §§ 182, 259.19; Jones Ill. Stats. Ann. 104.058, 105.19]. It was not filed, offered or put in evidence on the trial of the case, but claimant contends that, nevertheless, it constituted a waiver *pro tanto* of her disqualification as a witness. As the deposition covered all the details of claimant's case, this would amount to a complete waiver of incompetency. On the other hand, the estate contends that the examination

of an adverse party on a pretrial discovery deposition is not the calling of such party as a witness; that a deposition, like any other statement of a witness, may be used for purposes of impeachment, admission or to refresh the memory of a witness, but is not otherwise evidentiary, and therefore, the disqualification is not waived. The trial court sustained the position of the estate. It is this ruling of the court which constitutes the principal assignment of error in this court.

■■ The issue here turns essentially on the construction of sec. 2, par. 2, ch. 51, Illinois Revised Statutes (1951) [Jones Ill. Stats. Ann. 107.068] known as the "deadman's" statute. This provides in substance that "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion . . . when any adverse party sues or defends . . . as the executor, administrator, heir, legatee or devisee of any deceased person . . . unless when called as a witness by such adverse party so suing or defending . . . ." When the discovery deposition was taken and claimant was examined pursuant thereto, was she thereby "called as a witness" by such adverse party? No decision of our Supreme Court has directly passed upon this question. In *Chapman v. Bruton, Inc.*, 325 Ill. App. 334 (not published in full) occurs the following paragraph:

"Jacob S. Bruton is one of the defendants. He was examined prior to the trial by the plaintiff under Section 60 of the Illinois Civil Practice Act. Appellants contend for that reason that his disqualification under Sections 1 and 2 of the Evidence Act was removed. We do not accede to such contention, and believe that the trial court did not err in refusing to permit him to testify in his own behalf in regard to matters just before and during the collision. *Garrus v. Davis*, 234 Ill. 326, 330; *Blumb v. Getz*, 294 Ill. App. 432."

Section 60 [Ill. Rev. Stats. 1951, ch. 110, § 184; Jones Ill. Stats. Ann. 104.060] does not apply to pretrial depositions, and we do not know whether the examination was on a pretrial deposition or was an examination at the time of trial under section 60. In either event, the case constitutes a firm decision that disqualification is not waived by a pretrial examination. In a case before the Circuit Court of Appeals for the 7th Circuit, *Wasserman v. Darr*, 11 Fed. Rule Service 577 (1948), plaintiff had been examined at a pretrial discovery under Rule 26 of the Federal Rules of Civil Procedure. The deposition was on file in the proceeding. The court, citing *Chapman v. Bruton, supra,* held that the mere taking of such a deposition does not constitute a waiver of incompetence.

■ While the *Chapman* case is the only decision directly in point on the question, there are Illinois cases construing the language of the "deadman's" statute as it may relate to pretrial depositions. These hold that the taking of a deposition before trial does not constitute "calling" the party as a witness, within the meaning of the "deadman's" statute. They draw a sharp distinction between a pretrial deposition and the trial itself. *Winger v. Chicago City Bank & Trust Co.,* 325 Ill. App. 459; *Smith v. Billings,* 177 Ill. 446. In both cases depositions had been taken before trial, and thereafter the adverse party died. The depositions were excluded as evidence on the trial. The question of waiver was not present, since the deceased had been alive at the time of the taking of both depositions. But an interpretation of the same language of the Evidence Act was in issue; that is, had the adverse party been "called" as a witness. The courts in both cases pointed out the difference between pretrial proceedings and the trial itself. In *Smith v. Billings, supra,* the court said, p. 451:

410

"The language of the Supreme court of Iowa in *Quick v. Brooks,* 29 Iowa 484, clearly expresses the rule by which the competency of testimony under section 2 must be tested. It is there said: 'Within the meaning of this statute, when did plaintiff testify? At the time his deposition was taken, or at the time of its use on the trial? We clearly think the latter. . . .' "

In the *Winger* case, *supra,* the court said, p. 492:

"We feel that section 2 refers to evidence upon the trial of a cause. If a deposition of an interested witness is taken prior to the trial and one of the parties to the cause dies prior to the deposition being read in evidence, we are of the opinion that in so far as the testimony in the deposition affects the deceased it is inadmissible upon the trial of the cause. The taking of a deposition is not a trial of a cause when offered upon the trial of the cause, it is a substitute for the testimony of the person who made the deposition."

■ Pretrial discovery is designed to permit exploration and to avoid surprise. It is like a proceeding for the filing of interrogatories, or, perhaps, a comprehensive bill of particulars. It is directed toward making the judicial process one of determining the facts appertaining to the issue and rendering a just decision thereon, rather than the promotion of a battle of wits between counsel. In actual practice, it is often taken for granted that there will be discovery depositions by both sides, and the broadest range of examination is permitted, very often without objection and on a quite informal basis (there being no one present who could rule). The parties rest secure in the belief that neither side will lose any rights and that the deposition will not be presented in evidence, except as an admission or by way of impeachment. Hence, the principle of the case of *Winger v.*

411

*Chicago City Bank & Trust Co.,* 325 Ill. App. 459, and *Smith v. Billings,* 177 Ill. 446, *a fortiori* applies to discovery depositions taken before trial.

Other jurisdictions which have upheld the same principle are the following: *DeLaurent v. Townsend,* 243 N. Y. 130, 152 N. E. 699 (1926); *Bambauer v. Schleider,* 176 App. Div. 562, 163 N. Y. Supp. 186 (1917); *Farmers Loan & Trust Co. v. Wagstaff,* 194 App. Div. 757, 185 N. Y. S. 812 (1921); *Maldaner v. Smith,* 102 Wis. 30, 78 N. W. 140 (1899); *Norman v. Kernan,* 226 Wis. 78, 276 N. W. 127 (1937); *Starkweather v. Conner,* 44 Ariz. 369, 38 P. (2d) 311 (1934); *Prince v. Abersold,* 123 Ohio 464, 175 N. E. 862 (1931); and *Clayton v. Ogden State Bank,* 82 Utah 564, 26 P. (2d) 545 (1933). In the case last cited, *Clayton v. Ogden State Bank, supra,* the statute involved wording similar to that of Illinois with respect to disqualification of the witness, to-wit: "unless such witness be called to testify by such adverse party." The court there said, p. 546:

"The real question is whether the adverse party has called the witness in his behalf and thereby removed the incompetency. . . .

"Some of the cases hold that the taking of a deposition by the adverse party renders the witness competent to testify, others hold that the taking of the deposition and the further step of filing it with the court is requisite, while others hold that the deposition or part of it must be offered in evidence before the incompetency is removed and then only as to matters offered."

The court then sets out the Utah statute which gives the party the right to take the deposition of any witness before trial and says, p. 548:

"The taking of a deposition does not constitute evidence in a case. The officer before whom the deposi-

412

tion is taken has no power to pass upon the relevancy, materiality, or competency or otherwise whether any matter or thing inquired about may be admissible in evidence. Such questions are for the court . . . . The deposition may be taken for the purpose of exploration, or ascertaining of facts on which either party may rely. . . . It is clear . . . the taking of a deposition has nothing to do with the competency or incompetency of a witness. The question of competency is one to be determined by the court at the time the evidence is offered, and then it is not a question of waiver, but one as to whether, 'such witness be called to testify . . . by such adverse party,' or such adverse party offers in evidence the deposition of such witness, . . . ."

In *DeLaurent v. Townsend*, 243 N. Y. 130, *supra*, defendant in a claim on behalf of an estate was directed to and did appear and give information with respect to certain property which it was charged belonged to the estate. Thereafter, no further proceedings were taken before the surrogate. An action was brought in the Supreme Court for recovery of the property. On trial of this cause, defendant was permitted to testify that the property had been given to her by the deceased in the course of certain personal transactions with him. It appears that prior to 1914, the New York statute specially provided that when a witness appeared and was examined in such discovery proceeding, all objections as to his testimony in the same transaction and in further litigation was waived. This statute was, however, repealed. The court held that the disqualification of the defendant to testify on the trial in the Supreme Court was not waived by her having appeared and given discovery in the probate court.

A review of the New York authorities and an analysis of the distinction between discovery proceedings

413

and a trial on the merits is to be found in the case of *In re: Schulman's Estate,* 189 Misc. 672, 72 N. Y. S. (2d) 239 (1947). It appeared there that in a proceeding to discover assets, decedent's brother was examined in the surrogate court. Upon trial of the claim to the assets, the brother urged that since his testimony had been elicited by the estate, all objections to his disqualification were waived and that his deposition on a discovery should be admitted. The court, however, sustained the objection to the admission of the deposition, saying that waiver of disqualification does not apply to the examination of the respondent taken during the inquisitorial stage of the proceeding, but only to the trial on the merits.

In *Maldaner v. Smith,* 102 Wis. 30, *supra,* the court held that a deposition taken out of court does not become evidence for the party taking it or any party to the cause until offered and received as evidence, and therefore, disqualification is not waived. To the same effect is *Norman v. Kernan,* 226 Wis. 78, *supra.*

Cases to the contrary are cited by claimant. The principal cases so cited are : *Allen v. Pollard,* 109 Tex. 536, 212 S. W. 468 (1919); *Ess v. Griffith,* 139 Mo. 322, 40 S. W. 930 (1897); *Bush v. Block,* 193 Mo. App. 704, 187 S. W. 153 (1916); *McClenahan v. Keyes,* 188 Cal. 574, 206 Pac. 454 (1922); *American Fruit Growers v. Calvert,* 186 Wash. 29, 56 P. (2d) 1307 (1936); *Barrett v. Cady,* 78 N. H. 60, 96 Atl. 325 (1915); and *Andrews v. Smith,* 198 N. C. 34, 150 S. E. 670 (1929). The cases of *Zackheim v. Zackheim,* 75 Colo. 161, 225 Pac. 268 (1924), and *Miller v. Consolidated Royalty Oil Co.,* 23 F. (2d) 317 (C. C. A. 8th) (1927) cited by claimant, apparently involved the waiver doctrine regarding testimony given upon a trial, rather than some form of preliminary proceeding. The *Zackheim* case was cited and followed *as to trial testimony only* in *Stender v. Cunningham,* 123 Colo. 5, 225 P. (2d) 52

414

(1950). The Kentucky cases cited by claimant apparently make the question of waiver turn entirely on whether the deposition was filed. *Mutual Life Insurance Co. v. Green,* 37 F. Supp. 949 (Ky. 1941) and *Young v. Mitchell,* 302 Ky. 551, 194 S. W. (2d) 965 (1946). None of the cases undertook to consider the purposes and objectives of a pretrial discovery deposition nor to differentiate such procedure from a trial on the merits.

██ ██ Claimant urges that we should correct what she says is an injustice in the application of the statute. She contends that it was an unfair tactical advantage to permit the estate to discover in complete detail the nature of her claim and to deny her the right to testify except in rebuttal of those witnesses who had testified to admissions made by her against her interest. This is in effect urging the setoff of what appears to be a tactical advantage against a long established statutory policy. The pretrial discovery proceeding was open to claimant. She had knowledge of all the facts concerning her case before the estate had. True, she could not examine the decedent, but she could have examined in advance of the trial any or all of the witnesses who appeared on behalf of the estate, and procured, if such there were, witnesses who would have controverted the testimony of the estate's witnesses. Whatever disadvantage there was to claimant was that which is inherent in all pretrial discovery examinations. If the court had sustained claimant's position, she would have had an open field in testimony relating to all the personal and almost conjugal aspects of her relationship with the decedent. He could not have been returned to life to testify to the contrary. The nature of this case reveals that there is still essential wisdom in the "deadman's" statute. Some sentiment for a repeal of the statute exists because, undoubtedly, at times injustice or considerable

415

annoyance and difficulty is put upon a claimant against an estate because of the disqualification. How does this disadvantage weigh against the deceit, fraud, perjury and exaggeration temptingly put before a claimant making a case based on personal transactions with a dead man? Should the statute be amended? If so, how and with what restrictions, if any, upon claims based on purely personal transactions? Claimant appeals to the court to use the method which she advocates, that is, by declaring a waiver of the disqualification when a discovery deposition is taken. We consider it our duty to give the statute a fair and reasonable meaning and not, by a process of indirect attenuation, repeal or partially repeal it. The legislature, unlike the court, could hear testimony pro and con and could, as a matter of policy, determine whether the statute should be repealed, qualified, or remain as it is. We have no such freedom in determining the law. It is our conclusion that the incompetency of the claimant was not waived by the taking of a discovery deposition.

 Claimant argues that certain facts testified to by some of the witnesses for the estate were in effect testimony of "admissions" made by claimant and that, therefore, she should have been allowed to testify as to those facts under par. 4, sec. 2, of the Evidence Act. What these witnesses testified to was that claimant had taken long trips to Florida during the period in which she said she was rendering continuous service to the decedent. There was no reason why claimant could not have produced other witnesses to testify concerning these trips, if she desired to show that they were of a business nature or necessary for her health. It would be a strained and artificial construction of the word "admissions" for us to uphold the contention of the claimant in this respect.

 Claimant argues that she was entitled to an instruction which would have informed the jury that it could render a verdict on a *quantum meruit* basis, pursuant to the alternative claim in claimant's complaint. There was no proof as to the value of the services, claimant relying entirely on her claim to the entire estate. We cannot say that the rendition of personal services of such vague character and of such uncertain duration as were here shown by the evidence, could be made the basis of a *quantum meruit* recovery, without any testimony as to the value thereof. In *Moreen v. Estate of Carlson,* 365 Ill. 482, the court held that it was proper to permit a *quantum meruit* recovery on a claim made under an express contract, but held that there must be evidence upon which such a *quantum meruit* recovery may be had. In that case, plaintiff claimed the entire estate amounting to $35,000 on the basis of an express contract, but the trial court allowed her only $728, being what he considered to be the value of the services rendered. The court held that there was no evidence concerning the value of the services, and reversed the judgment. In this case there was no evidence of any *quantum meruit* value, and the services rendered were not of such character as to permit an estimate of their value without such evidence.

*Judgment affirmed.*

ROBSON, P. J. and TUOHY, J., concur.